IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LAUREDA JO MUNCY,

      Plaintiff,

      v.                                    **CASE NO. 2:13-cv-12434**

CAROLYN W. COLVIN,
      Acting Commissioner of Social Security,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (hereinafter SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1383(c).   By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).   Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 13) and Defendant's Brief in Support of Defendant's Decision (ECF No. 16).

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 13) and Brief in Support of Defendant's Decision (ECF No. 16).

BACKGROUND

Laureda Jo Muncy, Claimant, applied for Supplemental Security Income under Title XVI of the Social Security Act and for medical assistance under Title XIX of the Social Security Act, on or about March 17, 2010 (Tr. at 143-146).   The claim was initially denied on September 17,

2010 (Tr. at 72-76).   On September 30, 2010, Claimant filed a request for reconsideration (Tr. at 77-79).   The request for reconsideration was denied on January 27, 2011 (Tr. at 80-86).   A request for hearing by Administrative Law Judge (ALJ) was filed on February 8, 2011(Tr. at 87-89).   An administrative hearing was conducted on January 17, 2012 (Tr. at 32-54).   In the Decision dated June 15, 2012, the ALJ determined that the Claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act (Tr. at 10-31).   On July 3, 2012, Claimant requested a review by the Appeals Council stating that the ALJ did not consider all substantial evidence (Tr. at 7).   On April 17, 2013, the Appeals Council received additional evidence from Claimant which it made part of the record (Tr. at 6).   Medical records, Asthma & Allergy Center, March 30, 2012, through July 6, 2012, were admitted as Exhibit B36F.   On April 17, 2013, Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.   *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."   42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.   20 C.F.R. §§ 404.1520, 416.920 (2013).   If an individual is found "not disabled" at any step, further inquiry is unnecessary.   *Id.* §§ 404.1520(a), 416.920(a).   The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.   *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not, the second inquiry is

whether claimant suffers from a severe impairment.   *Id.* §§ 404.1520(c), 416.920(c).   If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d).   If it does, the claimant is found disabled and awarded benefits.   (*Id.)* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.   *Id.* §§ 404.1520(e), 416.920(e).   By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.   *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2013).   The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since March 16, 2010[1], the application date (Tr. at 15).   Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of asthma, arthritis in both ankles and obesity.   At the third inquiry, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or

---

[1]  Although supplemental security income is not payable prior to the month following the month in which the application was filed, the ALJ considered the complete medical history consistent with 20 C.F.R. 416.912(d).

equals the level of severity of any listing in Appendix 1 (Tr. at 16).   The ALJ then found that Claimant has a residual functional capacity to perform less than the full range of light work, reduced by nonexertional limitations[2] (Tr. at 18).   As a result, Claimant can perform light work as a routing clerk and machine tender (Tr. at 25). Claimant can perform sedentary level work as an inspector and security monitor.   On this basis, Claimant's SSI benefit was denied (Tr. at 25).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.   *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

---

[2] The ALJ held that Claimant has the residual functional capacity to perform light work, she can lift 30 pounds occasionally, up to 20 pounds frequently; sit four hours in an eight-hour workday, 2 hours without interruption; and walk two hours in an eight-hour workday, one hour without interruption (Tr. at 18).  She can occasionally operate foot controls bilaterally, occasionally stoop or climb ramps/stairs, but may never climb ladders or scaffolds, balance, kneel, crouch or crawl.  She should avoid all exposure to unprotected heights and may only occasionally be exposed to vibrations (Tr. at 18).

the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on February 7, 1978.   She completed the ninth grade. Claimant has a GED, general education development.   Claimant reported that she has obtained certification as a certified nursing assistant and phlebotomist (Tr. at 392).   On the date of the hearing, Claimant was 33 years old.   Claimant has never been married.   Her thirteen and eleven year old daughters live with her. She possesses a driver's license (Tr. at 36).   Claimant testified to having dyslexia.   (*Id.*) Claimant was last employed in 2000 as a nursing assistant (Tr. at 391).

The ALJ left the record open for 14 days for the submission of additional evidence per Claimant's request.   Upon receipt of the additional medical evidence, a supplemental hearing was held on April 17, 2012 (Tr. at 50-54).   Claimant waived her presence at the supplemental hearing. Vocational Expert, Dwight L. McMillion, appeared and testified at the supplemental hearing. Claimant's attorney was present during the supplemental hearing.

Claimant testified that she worked for one day while she was pregnant in 2000 (Tr. at 37). She testified that she was let go because she "was not able to return due to difficulty with pregnancy."   (*Id.*)   Claimant testified to experiencing swollen ankles and severe pain in both feet and ankles when she stands on her feet for 15 minutes.   Claimant receives treatment for her back and ankles at Scott's Orthopedic (Tr. at 37-39).   Dr. Robert Lowe, with Scott's Orthopedic, treats Claimant's back.   Claimant is 5 foot 2 inches tall and weighed 350-360 pounds on the date of the

initial hearing (Tr. at 43). Claimant testified that Dr. Robert Lowe, with Scott's Orthopedic Center, recommends weight loss to ease her back (Tr. at 40).   Claimant testified to experiencing migraines and difficulty inhaling.

Claimant was involved in a motor vehicle accident in November 2002, where she injured her back and right ankle.   John M. Iaquinto, M.D., at St. Mary's Medical Center, surgically repaired the right ankle.   X-rays performed of her lumbar were negative and her cervical spine was incomplete because C6/7 was not imaged clearly (Tr. at 313).   Dr. Lowe has not recommended surgery for Claimant's back but has encouraged weight loss.

Claimant's right ankle required open reduction internal fixation after the motor vehicle accident in November 2002.   According to Dr. Iaquinto's Operative Report dated November 18, 2002, Claimant had surgery to insert a screw-in-anchor in her right ankle (Tr. at 324).   Dr. Iaquinto's progress notes reflect that by January 1, 2003, Claimant "was allowed to advance to full weight bearing with the [equalizer] brace" (Tr. at 1011).   On February 8, 2003, Claimant advanced to full weight bearing.

In Dr. Lowe's office notes from September 23, 2003, he reported that he would recheck Claimant in 3 months, at which time he expected to dismiss her. Dr. Lowe's treatment notes dated December 2003, advised Claimant of the need for exercise and "trunk strengthening" (Tr. at 748). Dr. Lowe noted that he did not anticipate further operations on Claimant's right ankle (Tr. at 750).

Claimant testified that she has had two surgeries on her right ankle (Tr. at 38).   The most recent surgery was to "remove some hardware that was coming out."   (*Id.*)   She testified that she does not take physical therapy.

Claimant testified to having two surgeries on her left ankle for tendon or ligament repair (Tr. at 39). Claimant reported that she injured her left ankle in 2007, when she missed a step going down the steps from her porch (Tr. 1047). She did have physical therapy after her left ankle surgery. She testified that the physical therapy did help "for a while." (*Id.*) She testified to experiencing back pain that begins above her waist and radiates down. She testified that Naproxen "dulls the pain." She testified to seeing her orthopedic physician twice a year regarding her back pain. Claimant testified to not using any kind of ankle braces or supports. Claimant did not wear special shoes for her ankles (Tr. at 37).

When asked by the ALJ if she experiences any problems caring for her personal needs such as bathing and dressing, Claimant testified to having problems reaching behind her back. Claimant testified to laying down twice a day because she gets really tired or because her back and ankles hurt (Tr. at 43). Claimant testified to taking Singulair at night and performing breathing treatments every four to six hours, as needed (Tr. at 40). Claimant testified to experiencing migraines which she takes Naproxen for pain (Tr. at 41).

Claimant testified that on an average day she wakes up at 6:00 a.m. to get the kids up and ready for school (Tr. at 41). She testified to trying to clean the house "a little throughout the day" (Tr. at 42). She testified that she sits in a chair while washing dishes and cooking. She attends church service on Sunday mornings. Claimant is able to dress herself except needing help reaching behind her back to put on her undergarment (Tr. at 43-44). Claimant wears slip-on shoes because her ankles are swollen and she cannot bend over to tie her shoes (Tr. at 44).

Claimant previously provided her activities of daily living to the Social Security Administration through a Function Report[3] submitted on May 3, 2010 (Tr. at 182-189).   In the Function Report, Claimant reported to experiencing back pain, feet and ankle pain, inability to stand for longer than 10 minutes and asthma requiring breathing treatment every 4 hours, as conditions that limit her ability to work (Tr. at 182).   Claimant reported her daily activities to include taking a breathing treatment, making breakfast, taking her medications, taking her kids to school, cooking and washing dishes while sitting (Tr. at 183).

In said Function Report, Claimant reported to taking care of her children.   Claimant reported to washing their clothes and dishes and to helping them with their homework.   Claimant reported that the breathing treatments and her back pain interfere with her sleep.   Claimant reported experiencing no problems with personal care.   (*Id.*)   Claimant reported to needing reminders to take her medicine but not needing reminders to take care of personal needs and grooming (Tr. at 184).   She reported to preparing meals such as sandwiches and frozen meals. She reported to being able to perform household chores of washing dishes and laundry.   It takes her 2 hours every two days to perform her household chores.   She reported that she could not bend or stand for a long period of time (Tr. at 185).   She takes the kids to and from school "most everyday."   (*Id.*)

She reported that she travels by driving or riding in a car.   She does not go out along due to problems with her ankle and foot.   (*Id.*)   She goes grocery shopping for approximately one hour per week and using a powered wheelchair when shopping.   Claimant reported to being able to pay bills, count change, handle a savings account and using a checkbook/money orders.   Claimant

---

[3] The Function Report was completed with the assistance of Helen Stepp, Claimant's grandmother.

reported that her ability to handle money has not changed since her medical condition began (Tr. at 186).

Claimant's hobbies were reported to include watching television, painting and working puzzles.   She paints wood carvings with her kids (Tr. at 42).   She watches television daily.   She reported that she has not experienced any change in her hobbies since her medical condition began. For social activities, Claimant interacts with others by taking, baking cookies, watching tv and using the computer.   (*Id.*)   Claimant reported to attending church on a regular basis.   Claimant reported to needing reminders to go places.

Claimant reported that she did not experience any problems getting along with family, friends, neighbors or others (Tr. at 187).   Claimant reported that her medical condition affects her ability to lift, squat, bend, stand, walk, kneel, climb stairs and complete tasks.   Claimant reported to being able to lift 10 pounds.   Claimant stated that she could walk for 10 minutes before needing to stop and rest.   Upon stopping to rest, Claimant could resume walking after 15 minutes.

Claimant reported to being able to pay attention "as long as needful." She reported to not following written instructions very well but she follows spoken instruction "pretty good."   (Id.) Claimant reported that she gets along well with authority figures.   She does not handle stress very well.   She reported to being able to handle changes in routine "pretty good" (Tr. at 188). Claimant reported to using a walker, wheelchair, cane, glasses and braces/splints.   She reported that the cane, glasses, walker and brace were prescribed by a doctor in 2002.   She reported to needing these aids for seeing, walking and shopping.

Claimant's activities of daily living includes going grocery shopping and small trips, preparing simple meals and lying down throughout the day for short periods.   She spends her days

watching television and listening to the radio.   Claimant cares for her pet dog.   She goes outside two to three times a day to walk the dog.   She washes dishes and does laundry.   She shops in stores, and by phone, mail and computer.   She indicated that she does not need to be reminded to care for personal grooming or to take medications.   She is able to take care of her finances.   She spends time with family and visits on holidays.   Claimant reported to being able to get along with others.

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

<u>The Medical Record</u>

In his office notes dated September 19, 2006, Dr. Lowe reported that "This lady is seen after 3 years' absence.   Looking back through the records she was on a cane when she was being evaluated.   Now she is over that and her legs are doing fine" (Tr. at 786).   Dr. Lowe reported to needing an MRI to rule out torn cartilage in Claimant's knee.   He stated "If she can pass it then the question is when can she go to work or when she can be released for work."   Dr. Lowe reported his impression was that Claimant's "basic problem is behind her."   Dr. Lowe noted "Apparently, without a letter at this point, her welfare benefits will be cut off and I certainly would double check on the knee before allowing that to occur."

In a letter reporting the treatment provided to Claimant on October 5, 2006, Dr. Lowe states: "The patient's condition is still currently the same.   She may continue to be considered for employment appropriate with her previous physical limitations" (Tr. at 768).   The letter is addressed "To Whom It May Concern."   (*Id.*)

10

In a note on prescription paper, Dr. Lowe informed the Wayne Welfare Department that Claimant's knee was stable per the MRI (Tr. at 788).   He reported that no operation was planned and that Claimant "may be considered for employment appropriate for her physical limitations." In office notes dated October 5, 2006, Dr. Lowe reported "As far as ability to work, she is getting help from the Wayne Welfare Department.   I think she could be considered for a job appropriate for her physical size and physical limitations, as opposed to not working" (Tr. at 793).

Claimant had left ankle surgery in March 2008, for repair of collateral ligament, arthrotomy with synovectomy.   Kevin D. Brown, M.D., an orthopedic physician, administered trigger point injections in Claimant's left foot.

Claimant points to evaluations by Bruce A. Guberman, M.D., an independent evaluator, and Stephen Nutter, M.D., an internist consultative examiner, to support her position that evidence does support ambulatory deficits.   Dr. Nutter performed an Internal Medicine Examination of Claimant on June 3, 2010 (Tr. at 369-373).   Claimant's chief complaints asserted "disability due to back pain and joint pain" (Tr. at 369).   Dr. Nutter noted that "The claimant ambulates with a limping gait with a cane in the right hand.   The claimant does not require a handheld assistive device" (Tr. at 370).   Claimant points out Dr. Nuttter's notation that "The claimant is not able to perform a squat due to back pain, due to knee pain and due to ankle pain" (Tr. at 372).   However, Claimant selectively leaves out Dr. Nutter's other statements regarding Claimant's alleged ankle pain.

Dr. Nutter's notes state:

The claimant can walk on her heels.   The claimant can walk on her toes.   She had difficulty performing tandem gait due to poor balance.   I would not trust her to balance or work around unprotected heights.   The claimant is not able to perform a

11

squat due to back pain, due to knee pain and due to ankle pain.   Muscle strength is 5/5 for all groups tested.

Dr. Nutter's summary states "There are range of motion abnormalities of the cervical and lumbar spine as noted above. Straight leg raise test is negative.   There are no sensory abnormalities.   Reflexes are normal.   Muscle strength testing is normal.   These findings are not consistent with nerve root compression" (Tr. at 372).

Dr. Guberman performed a "social security disability exam" on December 29, 2011 (Tr. at 1046-1054).   The examination took place after Claimant's claim was denied initially and denied upon reconsideration.   Claimant filed a request for a hearing with an ALJ on February 8, 2011. This request was made before the examination by Dr. Guberman (Tr. at 87-89).   Claimant's chief complaints at the December 29, 2011, social security disability exam consisted of "low back pain, neck pain, multiple joint symptoms, asthma, shortness of breath and headaches" (Tr. at 1046).

Dr. Guberman noted "The claimant cannot walk on toes, walk on heels, walk heel to toe or squat" (Tr. at 1052).   Dr. Guberman reported that "the claimant's gait is antalgic and she uses a cane.   Without the cane, her gait is very slow and also appears to be unsteady" (Tr. at 1053).

The ALJ's decision discusses an Internal Medicine Examination conducted by Dr. Nutter on March 15, 2012 (Tr. at 1188-1199).   Dr. Nutter reported that "The claimant ambulates with a cane in the right hand and a somewhat limping, waddling gait.   The gait is not unsteady, lurching or unpredictable.   The claimant does not require the use of a handheld assistive device.   The claimant appears stable at station and comfortable in the supine and sitting positions" (Tr. at 1190). Dr. Nutter reported that Claimant's upper and lower extremities have normal muscle strength at 5/5.   He reported that Claimant was not able to walk on heels but she was able to walk on her toes. Dr. Nutter noted that Claimant was unable to perform tandem gait due to poor balance.   She could

not squat due to knee and back pain (Tr. at 1192).   In summary, Dr. Nutter states that Claimant "does not require the cane for ambulation.   There is no evidence of rheumatoid arthritis."   In regards to Dr. Nutter's opinion evidence, the ALJ held "the medical evidence of record does support some limitations because of breathing, back and ankle difficulties, just not to the degree alleged" (Tr. at 22).

Dr. Nutter's second examination in March 2012, stated Claimant was able to lift/carry 30 pounds occasionally, 20 pounds frequently; able to sit four hours in an eight-hour workday, three hours without interruption; stand three hours in an eight-hour workday, two hours without interruption; and walk two hours in an eight-hour workday, one hour without interruption.   Dr. Nutter stated that Claimant does not need the use of a cane to ambulate.   She could occasionally operate foot controls, climb stairs/ramps and stoop.   She should never climb ladders/ropes/scaffolds, balance, kneel, crouch or crawl.   The ALJ gave "great weight to the opinion of Dr. Nutter because it is the most recent evaluation of the claimant's capabilities and the medical evidence of record supports it.   It takes into account the difficulties the claimant experiences because of her feet and ankles but balances that with all the activities of daily living she is able to perform on a consistent basis" (Tr. at 23-24).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred by relying on a non-acceptable medical source to deny her claim; (2) the ALJ failed to follow 20 C.F.R. 416.919o(b) when relying on an unsigned medical report from the state agency; and (3) the ALJ erred by failing to assess as to whether the claimant would meet or equal listing 1.02 (ECF No. 13).

The Commissioner argues that (1) the ALJ did not base his decision upon licensed psychologist Lester Sargent's Opinion and (2) Claimant's impairment does not meet or equal the severity requirement of Listing 1.02 (ECF No. 16).

Discussion

The ALJ held that after careful consideration of the evidence, he found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment (Tr. at 22).

Psychological Opinion

Claimant argues that the ALJ erred in basing his decision on Lester Sargent's medical opinion to deny his benefits.   Claimant asserts that Mr. Sargent is not a psychologist because he "only has a master's degree" (ECF No. 13). Further, Claimant asserts that Mr. Sargent failed to sign his report.   Claimant asserts that Mr. Sargent's report is not acceptable under the code of federal regulations under 20 C.F.R. 416-919o.

All psychological opinions on the record were performed by state agency psychologists. Claimant did not allege any mental limitations in her claim for SSI and did not receive any psychological treatment (Tr. at 16).   Claimant's assertions that the ALJ erred in relying upon Mr. Lester's report because he is not a licensed psychologist and because the report was not signed, are incorrect.   Lester Sargent, M.A., is a licensed psychologist (Tr. at 395).   Mr. Sargeant electronically signed his Adult Mental Profile on September 1, 2010 (Tr. at 396).

Mr. Sargeant was not the only psychologist to opine as to limitations on Claimant's ability to perform basic work activities (Tr. at 16).   Rosemary L. Smith, Ph.D., a non-examining psychologist, reviewed the medical evidence of record and opined "the claimant's mental impairments were not severe."   (*Id.*)   Dr. Smith noted Claimant's extensive activities of daily living consisted of self-care, care of her 2 children, preparing meals, doing housework, driving a car, shopping in stores, handling finances, watching television, painting, doing puzzles, socializing and attending church.   Jeff Harlow, Ph.D., another non-examining psychologist, affirmed the opinion of Dr. Smith in November 2010, based on the fact that no new mental limitations were alleged and activities of daily living have not changed significantly.   Therefore, the ALJ held that the mental impairments reported by the state psychologists were non-severe because they do not pose significant limitations to Claimant's ability to perform basic work activities.   (*Id.*)

Residual Functional Capacity Assessment

On August 10, 2010, medical consultant, Caroline Williams, M.D., performed a physical residual functional capacity assessment of Claimant (Tr. at 380-389).   Dr. Williams stated Claimant was able to lift/carry 50 pounds occasionally, 25 pounds frequently; able to sit six hours in an eight-hour workday; stand/walk two hours in an eight-hour workday; and push/pull with limited ability in the lower extremities.   Dr. Williams stated Claimant could occasionally climb stairs/ramps, kneel, crouch, crawl or stoop but should never climb ladders/ropes/scaffolds or balance. She should avoid concentrated exposure to vibration and moderate exposure to hazards, such as unprotected heights or dangerous moving machinery.   Dr. Williams reported that "Claimant's allegations are not totally credible in that the alleged symptoms and subsequent disability are disproportionate to the medical evidence found in the file.   MER [Medical Evidence

on Record] does not support presence of conditions/findings that met/equal listing level severity using SSA criteria and therefore, RFC reduced as described" (Tr. at 385).

The ALJ gave "some weight to the opinion of Dr. Williams because the allegations of 'two compressed disc or degenerative disc disease of the spine are not substantiated and the claimant's activities of daily living are very extensive'" (Tr. at 23).

Dr. Guberman stated Claimant can occasionally lift/carry 10 pounds, less than 10 pounds frequently; stand/walk two hours in an eight-hour workday; sit less than six hours in an eight-hour workday with the opportunity to sit/stand periodically because of reduced range of motion of multiple joints.   She could occasionally climb ramps/stairs but should never climb ladders/ropes/scaffolds, balance, kneel, crouch, crawl or stoop because of multiple joint problems. She would have limited ability to reach in all directions including overhead because of decreased shoulder range of motion.   All environmental limitations should be avoided.   The ALJ gave "little weight to the opinion of Dr. Guberman because his limitations are excessive when one considers all the activities of daily living that the claimant is able to perform and is not supported by the medical evidence of record" (Tr. at 23).

On January 27, 2011, Thomas Lauderman, D.O., a state agency non-examining physical physician, reviewed the medical evidence of record and performed a physical residual functional capacity assessment of Claimant (Tr. at 1018-1026).   Dr. Lauderman stated Claimant was able to lift/carry 20 pounds occasionally, 10 pounds frequently; able to sit six hours in an eight-hour workday; stand/walk six hours in an eight-hour workday; and had unlimited ability to push/pull to above listed weight limits.   Dr. Lauderman stated that Claimant's postural limits would be occasional.   He stated that Claimant should avoid concentrated exposure to temperature extremes,

16

irritants and hazards. Dr. Lauderman noted that "The medical evidence of record establishes a basis for a degree of pain and limitations. The claimant is partially credible" (Tr. at 1026). The ALJ gave "considerable weight to the opinion of Dr. Lauderman because he reduces the claimant from medium to light work based on the occasional ability to stoop or crouch" (Tr. at 23).

The court proposes that the presiding District Judge find that the ALJ's determination that Claimant possesses the residual functional capacity to perform less than the full range of light work is supported by substantial evidence (Tr. at 18, 24).

SSR 96-8p states that

[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.
SSR 96-8p, 1996 WL 362207, *34477 (1996).

In his decision, the ALJ found that Claimant does not have an impairment or combination of impairments equal in severity to any listed impairment, as no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. The Court proposes that the presiding District Judge find that the ALJ adequately considered Claimant's nonsevere impairments in assessing Claimant's residual functional capacity.

Listing 1.02A

Claimant asserts the ALJ erred in failing to assess whether she would meet or equal Listing 1.02. 20 C.F.R. 404, Subpart P, Appendix 1 pertains to the musculoskeletal system. Claimant asserts the ALJ incorrectly placed "most emphasis on Listing 1.04 instead of evaluating the claim

17

for Listing 1.02A, however the evidence does support ambulatory deficits" (ECF No. 13).   Listing

1.02A requires a finding of "Involvement of one major peripheral weight-bearing joint (i.e., hip,

knee or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b."   Section

1.00(B)(2)(a) and (b) defines "inability to ambulate effectively" as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk,
> i.e., an impairment(s) that interferes very seriously with the individual's ability
> to independently initiate, sustain or complete activities.   Ineffective ambulation is
> defined generally as having insufficient lower extremity functioning to permit
> independent ambulation without the use of a hand-held assistive device(s) that
> limits the functioning of both upper extremities.

> To ambulate effectively, individuals must be capable of sustaining a reasonable
> walking pace over a sufficient distance to be able to carry out activities of daily
> living.   They must have the ability to travel without companion assistance to and
> from a place of employment or school.   Therefore, examples of ineffective
> ambulation include, but are not limited to, the inability to walk without the use of a
> walker, two crutches or two canes, the inability to walk a block at a reasonable pace
> on rough or uneven surfaces, the inability to use standard public transportation, the
> inability to carry out routine ambulatory activities, such as shopping and banking,
> and the inability to climb a few steps at a reasonable pace with the use of a single
> hand rail.   The ability to walk independently about one's home without the use of
> assistive devices does not, in and of itself, constitute effective ambulation.

Although Claimant asserts that "the ALJ placed most emphasis on listing 1.04[4] instead of

evaluating the claimant for listing 1.02A," the assertion is clearly false.   In his decision, the ALJ

---

[4] Listing 1.04 requires the following:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis,
> osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise
> of a nerve root (including the cauda equina) or the spinal cord. With:

> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain,
>       limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or
>       muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the
>       lower back, positive straight-leg raising test (sitting and supine); or
> B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by
>       appropriate medically acceptable imaging, manifested by severe burning or painful

found that Claimant's impairments fail to satisfy Listing 1.02, Major dysfunction of a joint(s). The ALJ found that the examining and treating physicians' reports show the Claimant does not have the ambulatory deficits described in section 1.00(B)(2)(b), as required by 1.02(A) (Tr. at 16-17). Furthermore, the ALJ held "there is no evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, as required by Section 1.04" (Tr. at 17).

Credibility

The Fourth Circuit held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997)(unpublished)(an "ALJ's credibility findings... are entitled to substantial deference").   When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged.   *See* 20 C.F.R. § 404.1529(b). If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work.   *See* 20 C.F.R. § 404.1529(c).

The ALJ held:

In sum, the above residual functional capacity assessment is supported by a preponderance of the medical evidence.   There are no residual functional capacity statements from any treating source, only those from the State Agency and an

---

dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P., App. 1, § 1.04 (2013).

independent evaluator.   The State Agency physicians showed a decline in ability to perform[] medium work, so a reduction to light work was justified.   The claimant's testimony was less than fully credible based on her willingness to exaggerate her symptoms to mislead the independent evaluator in the examination. Her allegations of the frequency and severity of asthma attacks cannot be substantiated by the medical evidence of record.   She fails to follow consistently the medical advice given to her regarding abdominal strengthening exercises.   Her ability to care for two children and herself, cook, perform household chores, laundry, help children with homework, paint woodcarvings, work puzzles and watch television show an individual who still enjoys a significant quality of life. As such, the undersigned finds the claimant limited to less than the full range of light work (Tr. at 24).

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment.

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations.   *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

The ALJ found that Claimant's level of severity implied in her alleged impairments was not fully credible (Tr. at 22).   The ALJ points out contradictory statements made to Dr. Guberman by Claimant.   The ALJ held "The claimant made contradictory statements to Dr. Guberman regarding the issue of falling.   She reported to Dr. Guberman that she experienced weakness and instability in both legs, which had caused her to fall in the past.   Then, when she reported weakness and instability in the right ankle, she stated she had not fallen." (*Id.*)

During a social security disability exam on December 29, 2011, Claimant reported to Dr. Guberman that she had been hospitalized for asthma "on one or two occasions with the last time

20

being in May 2011 at Williamson Appalachian Regional Hospital for one week" (Tr. at 1048).
However, medical records reflect that Claimant was admitted on May 29, 2011, and discharged on
May 31, 2011 (Tr. at 1109).

Vocational Expert's Testimony

    At the hearing on January 17, 2012, the ALJ asked the Vocational Expert (hereinafter, VE)
if jobs existed in significant numbers in the national economy that someone with Claimant's age,
education and lack of past work could perform (Tr. at 44-45). The ALJ instructed the VE to
consider the individual to be limited to light work, and may only occasionally climb, balance,
stoop, kneel, crouch and crawl, and must avoid concentrated exposure to temperature extremes,
hazards, smoke, fumes, odors and pulmonary irritants.   The VE testified that such a person could
perform jobs including such as hand packer, grader and sorter (Tr. at 45).   The VE testified that
such a person could perform jobs at the sedentary level, such as an inspector and an assembler.

    The ALJ asked the VE if jobs existed in significant numbers that someone with Claimant's
age, education and lack of past work could perform with the previously stated limitations and
would require a sit/stand option.   The VE testified that the individual would be precluded from the
light jobs previously provided in the first hypothetical. However, the individual could still perform
other light work, such as a routing clerk and a machine tender (Tr. at 46).

    At the supplemental hearing on April 17, 2012, the same VE testified after reviewing new
exhibits provided by Claimant that were admitted into evidence and made part of the record (Tr. at
50-54).   The ALJ asked the VE if jobs existed in significant numbers in the national economy that
someone with Claimant's age, education and lack of past work could perform with additional
limitations of only being able to occasionally lift 30 pounds and frequently lift up to 20 pounds.

The individual could sit for four hours out of an eight-hour work day, three hours without interruption; stand for three hours out of an eight-hour day, two hours without interruption.   The individual could sit or walk for two hours out of an eight-hour day, one hour without interruption. The individual could only occasionally operate foot controls bilaterally; occasionally climb a ramp or stars; and occasionally stoop (Tr. at 51).   The individual could never climb a ladder or scaffold, balance, kneel, crouch or crawl. The individual should avoid all exposure to unprotected heights. The person may have only occasional exposure to vibrations. The VE testified that such an individual could perform a limited range of light and sedentary work.   (Id.)   At the light level, the individual could perform work as a routing clerk or machine tender.   At the sedentary level the individual could perform work as an inspector or security monitor.

Based on the VE's testimony, the ALJ ruled that Claimant could perform work in the national economy, and therefore, she was not disabled under the Act (Tr. at 25).   Pursuant to SSR 00-4p[5], the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

<u>Conclusion</u>

The ALJ's decision was issued on June 15, 2012.   The ALJ found that Claimant's impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.   Substantial evidence supports the determination of the ALJ.   The ALJ's decision reflects an adequate consideration of her impairments.   The ALJ appropriately weighed the evidence of record in its entirety to determine that nonsevere impairments do not preclude her

---

[5] Social Security Ruling 00-4p:  Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

ability to perform any substantial gainful activity.   The ALJ fully complied with his duty in keeping with 20 C.F.R. § 404.1523 (2013).   Accordingly, the ALJ's denial of Claimant's application for SSI under the Social Security Act, is supported by substantial evidence.

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's credibility assessment and determination that Claimant is not incapable of all work activity.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Judge John T. Copenhaver, Jr.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d

91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

 The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

 Enter: August 26, 2014

        Dwane L. Tinsley
        United States Magistrate Judge